The next case for argument this morning is Walls v. Donathan. Good morning, Your Honors. The expression, hard facts make bad law, sums up this case. Any matter implicating the Sexually Violent Persons Act will be unsavory. I have a fundamental question about what is under review in this case. The appeals in state court challenged both the 2015 order and the 2018 order. Is Walls being detained pursuant to either order today? Your Honor, I would say to both. I would say both orders. How? There's yearly review under the statute. Why isn't the detention, if any, under a more recent order? Well, and it's a difficult question in the sense of, as Your Honor recognizes, each year there is an annual renewal, or I should say annual review. And so our position essentially is that his habeas, his current habeas challenge, including this appeal here, encompasses basically everything, including the most recent. I don't think you can file a writ of habeas corpus challenging things that have yet to happen. Right? There's no challenge so far as I can see to any post-2018 order. Multiple orders had yet to happen. And, of course, you can't challenge something that's yet to happen in part because you don't know what evidence will be used in those proceedings. The contention in this case is that there was a violation of the self-incrimination clause because evidence that Walls was compelled to give while he was in prison serving his penal sentence was used under the Sexually Violent Persons Act. Do we know that that evidence was used in 2018? I would say the short answer is no, we don't know. Yeah, we don't know. We certainly don't know whether it was used in 2019, 2020. You see the problem. The evidence was used apparently in 2015, but we don't even know in this record whether it was used in 2018. It makes it very hard to have a constitutional challenge to what happened even in 2018, let alone in all the years since. Certainly, and I would point to the Martin case, the Martin v. Barto and the Magwood v. Patterson case, in that those cases they recognize that each annual commitment review and decision can constitute a new fresh injury which is capable of being attacked. Indeed, it's capable of being attacked, but so far as I can tell hasn't been attacked. And, of course, the ground on which the 2015 decision is being attacked may be utterly inapplicable to the 2018 decision, the 2020 decision. It leaves me at sea about what this litigation could be about. Certainly, and we are additionally hampered by the fact that the 2018 ruling, there was no – I don't believe there was a court order. I know there were no transcripts. There was no oral order. And so far as I can tell on the appeal within the state court of the 2018 proceeding, there were no arguments made under the federal constitution, only under state law, which gives you a procedural default independent of the problem under 2254. Certainly are, and obviously a large part of this problem is the fact that Mr. Walls has been pro se, not exclusively, but mostly for this 22-year period. I know it's a serious problem, but, well, he has a lawyer now and he might challenge the current proceeding and find out what evidence was used most recently. Yes. I can understand an argument that it's not moot because if it's moving every year, it's arguably capable of repetition but evading review. Right. But if we have no reason even to think that the compulsory evidence was used more recently than 2015, it's hard to see what's at stake. Certainly, Your Honor. And I would also point to the fact that, again, I just would emphasize Martin and Magwood as enabling this appeal in terms of the challenge to the most recent. But wasn't it clear there what evidence had been used to keep him detained? In Martin, yes. That case had a clearer record than we have here. Mr. Kelleher, maybe the state can shed some light on this, but I'd at least benefit from hearing your understanding. It's going a little bit to Judge Easterbrook's question, and that is when the periodic annual renewals, right, they take a look at a situation every year. Do – what role does the initial – is it 2015, the initial determination? Yes. What role does that play in those? Do you know the answer to that? I'm sorry, Your Honor. I'm just trying to – What role it plays in – They don't do a full-blown kind of – they do an abbreviated version of it, right? Yes. They check to see whether he should be maintained in the program. Yes. That way. Is there reliance upon going all the way back to 2015 that some of the baseline predicates for the commitment of him to the program in 2015 remain in place? Or what all happens at the renewals? I don't know exactly, but I can tell you from my reading of the record, my understanding of this case is there is some – they use some of that. And maybe that's not the best answer, but they do obviously look at what happened.  I'm just trying to think of – does the 2015 ruling somehow carry forward? Or is it – no, no, no. It really doesn't carry forward. At the annual periodic renewals, it's a fresh finding. It's a brand-new finding that you would – that you need to kind of – that you need to challenge if you're challenging his current detention. Yes. And I would describe it as the latter. It's a fresh finding because, again, they have – now, it doesn't go to the extent of a trial as the 2015. I would potentially – this can shed some light – Appendix 15, and that is Paragraph 33 of the State Supreme Court – excuse me, State Appellate Court decision. In there, they set forth the orders from October 23rd, 2018, and there's four. One is finding no probable cause for an evidentiary hearing. Another is the continuing Mr. Wall's involuntary commitment. The third is denying Mr. Wall's motion for discharge. And then fourth, denying his request for summons of the two witnesses. So that October 2018 ruling encompassed those four things. Is the standard for the annual assessment – is the burden on Mr. Walls to establish that he's no longer a sexually violent person or that there's probable cause to believe he's no longer a sexually violent person? Yes. So the burden's not on the state, correct? As I understand it, yes. It's on Mr. Walls to establish that.  And then he also, again, at this time in October 2018, he had also filed a petition for discharge. So there was essentially two separate components. And obviously on that second part, that would be Mr. Wall's burden on a clear and convincing standard. You know, obviously, again, we have the hand that we're dealt with, and Mr. Walls has been pro se, again, to reiterate that point. And the Illinois Appellate Court, to its credit, admitted that, A, it has no real confidence he should be incarcerated, and B, essentially, he's been experiencing ineffective assistance of counsel. So I think, at the least, a reversal back to the state court where he can have adequate counsel, effective counsel, because, again, there's a lot of moving parts here. And, again, his pro se filings have not been substandard, but obviously there's a lot of things that could have been pursued that have not been. So if there are no further questions, I'll reserve the balance of my time. Thank you, Your Honor. Thank you, Mr. Keller. Ms. O'Connell. Good morning. May it please the court, counsel, I'm Assistant Attorney General Erin O'Connell on behalf of Greg Donovan. Hopefully I can shed a little bit of light on how the SVP proceedings work. The original trial is held before a jury, and the state bears the burden of proving, beyond a reasonable doubt, that he has a qualifying offense. When you refer to the original trial, you're referring to the 2015 proceeding? Here, that would be in 2015, correct. Okay, thank you. So he has a qualifying offense, he has a current mental disorder, and he is currently substantially probable to commit future acts of sexual violence. Once that determination is made, the reexamination considers whether circumstances have changed since either that or the most recent reexamination to show either that he no longer has that mental disorder, or he is no longer substantially probable to reoffend. So I would submit that he remains in custody pursuant to the original 2015 judgment for the entirety of the time that he is in civil commitment. Who has the burden at the reexam? Is that on Mr. Walls to establish that? He does. So he has to present a plausible account on one of those two elements. And then if the probable cause showing is made, then the state does bear a burden of essentially showing that he remains a sexually violent person. But he does have a minimal burden at that stage, essentially to show that a hearing is warranted on the issue of whether he remains an SVP. So there is a presumption going in that he qualifies based on the original 2015 trial? And so I think Martin v. Bartow is really instructive on this. So that case considered Wisconsin's scheme, and it's very similar to Illinois's. And as this court noted in that case, generally the issue at the reexamination is whether the person's condition has changed. So in Martin v. Bartow, the Wisconsin appellate court had taken an exceptional step and had reexamined all of the issues in the context of a reexamination proceeding. The court in that case noted that that was a departure from the ordinary course and found, therefore, that that petitioner could raise those issues in the context of a challenge to the new judgment. However, the general way that these cases proceed is that the only issue at the reexamination is whether he remains an SVP, and that's compared to the prior time period. So he does remain in custody pursuant to the 2015 judgment, and we certainly don't moot these. I mean, he gets the annual reexamination, and these cases proceed rather slowly. So in his initial habeas petition, there was no dispute that he was in custody pursuant to that original judgment, and he could raise his claims as a challenge to that original judgment. And he did so. He raised claims under the Fifth Amendment and the Sixth Amendment in his original habeas petition, and it was adjudicated at that time. So is that to say in your judgment it's not moot with respect to the extent that the 2254 petition before us is in part challenging the 2015 commitment? Yes. So I don't think mootness is the correct framework to look at it. Well, if it's challenging the 2015 commitment, it's not moot, but barred as second or successive. Yes, exactly. So he's got other burdens here. I mean, other barriers here. Yes. So it's clear from looking at his second petition that he was again raising the same claims that were a challenge to the original trial. If he had instead challenged the state court's finding of no probable cause to believe that he was no longer an SVP… So the 2018. Right. So if he had actually challenged that judgment, it would not be a successive petition because he would be challenging the new judgment, and he would be raising the claim that the state court had addressed in that proceeding. So the question before the court now is… Do you think that any constitutional claim was raised in state court with respect to the 2018 adjudication? Because the state judge, state judges did not discuss any constitutional claim. No. He was pro se. He opted to be pro se in that proceeding, and his brief was very difficult to parse. It's been kind of the same throughout, and his habeas petition here as well, he does have some difficulty, I think, with legal concepts. But they, in looking at his brief, construed it within the context of the statute. This was a challenge to the 2018 reexamination, so they evaluated it in terms of the statutory standard, which he did not clearly articulate in his own appellate briefing, but that's what the appellate court addressed in the context of that. And they affirmed on that and didn't rely at all on Buck's report, which is what the alleged constitutional violation occurred in, I believe. That's correct. So the constitutional violation, and it's a little confusing because I think Buck has been a repeat player, and this is often the case. So she drafted the original expert opinion, provided the testimony at the original trial, and then she continues to reexamine him. So she has multiple reports in the record here. So his Fifth Amendment claim, for example, is based on an interview of him that occurred when she did her original evaluation. And that claim was that by just asking him questions and kind of noting the way his demeanor was in their conversation, that she had violated his Fifth Amendment right. So that claim only relates to the original trial, and that claim is the same claim he is pursuing in what we have described as his successive habeas petition. So the issue for him here is that he could theoretically raise an issue related to his subsequent judgment. He just didn't do so. He's continued to only raise challenges to the original judgment. Ms. O'Connell, there's a part of this case that bothers me immensely, and it's not directly before us, but you've got to take this back to your client. Mr. Walsh should not have had to wait 12 years for a trial on the determination about whether he should be committed to this program. State law required that the trial happen within 120 days. Civil commitment is about as serious of constitutional business as there is. The deprivation of liberty to civilly commit somebody is very, very serious. Him waiting 12 years is not acceptable. Absolutely, and if I can be candid with the court, I think the underlying issue here is the one of his self-representation. It may well be, and I understand he could be a very difficult customer. I got it. But somebody has to be keeping an eye on this program and the right for this trial or the need for this trial to go forward. And if he's throwing in all kinds of barriers, well, that's on him. But something has got to happen. That trial has got to occur. And 12 years is just beyond the pale, given the constitutional gravity of what is at stake here. I would agree with the court. I believe the explanation for the delay is that he was litigating pro se motions, and they were repetitive pro se motions. Our court has had some issues with this. A couple of members of this panel have been involved in it. Not in your state, in Wisconsin, with extraordinary delay with direct criminal appeals. And it doesn't sit well, given the constitutional rights that are at stake. So you can do with that what you want. That issue is not before us to review. But I got to tell you, I mean, it leaps off the pages of these briefs as problematic. And I do believe that this may be a case where perhaps the state court might, at some point, force counsel on Mr. Walls to move things along and ensure a more adversarial process at these reexamination proceedings. You just say, we're holding the trial. You can either show up and participate and behave yourself or not. But the trial is going forward. I mean, I do think in this case, perhaps the court erred on the side of giving him his right to self-representation in a way that undermined the proceedings in general and led to a lot of the delay. And ultimately, a lot of the procedural issues that have arisen in this case is due to his representation of himself at various critical stages, including his direct appeal. If I could just tack on to what Judge Scudder said, and you noted it, the delay in the appeal filed by counsel as well. It was four years before any briefing schedule was put in place on that. And so I share Judge Scudder's concerns. And I know the appellate court itself did express concern in the context of this case and specifically resuscitated the direct appeal that had been pending for so long. The issue was he had, again, fired counsel at the appellate stage and then not filed the pro se brief. But at a certain point, you know. I share those concerns. You've got a very talented office, and you can make some phone calls and have some meetings and try to ensure that this doesn't happen again. Point taken, Your Honor. But on the issue before this court. No, it's not before. This is not directed at you. I'm not shooting the messenger here. You know, it's a real problem here, though. Right. And hopefully going forward, he will have more representation by counsel than he has had previously. Did he have representation at the 2025 hearing? If you know, the re-exam? I do not know the answer to that, unfortunately. I have expressed. So certainly given this case, we are having internal discussions about his own self-representation going forward. And there are certainly indications that he may not be competent to be litigating his own case going forward. So that's been addressed. But here he has unfortunately already now twice litigated the same original 2015 judgment. This petition, the district court correctly deemed successive and dismissed it on that basis. And we would ask that this court affirm that judgment. Thank you, Ms. O'Connell. Anything further, Mr. Kelleher? Yes, Your Honor. I just wanted to quote the language from Martin I was looking for previously. And that is, a person's current status as a sexually violent person is, quote, a determination that is constantly and forever disputable as a matter of constitutional law. So along those lines, again, and I respectfully disagree with my colleague, Mr. Walls has challenged, in addition to the 2015 ruling, in 2018, the fact that the court denied, again, his petition for discharge, as well as denying the summons. But do we have any reason to believe that he raised constitutional arguments in 2018 that are being repeated now? In other words, did he argue in 2018 that the self-incrimination clause had been violated? Yes, and, Your Honor, I don't know the answer to that because essentially we don't have that information. But I would say, not to evade the question, but I would say at least his subsequent habeas petition did raise these constitutional issues and did challenge the 2018 rulings. So, again, that would, as we set forth in our briefs, that would foreclose the state's position that this is a successive petition. It is not because, again, these are different arguments and they challenge issues. But I hope you see the problem. If we say this is not successive because it's a challenge to the 2018 order, all federal constitutional claims appear to have been defaulted. So it's a different ground on which Walls loses, but the claim hasn't been preserved. I understand, Your Honor. This came to you long after there was anything you could do about that. Yes, unfortunately. Let me second that. Mr. Keller, you're very good at what you do. And you can get a copy of this transcript and send it to your client. You can get in touch with him. He can file a new 2254. It's not up to us to advise him, but there are ways forward here. And you're dealt the hand you're dealt. Thank you, Your Honor. And just one final point. I appreciate Your Honor's concerns about the length of delays here. And obviously some have been self-inflicted by Mr. Walls. But at least for the 2018 rulings and situations, I think all these delays and the fact that these reexaminations hinge on expert testimony and psychological evaluations, that just demonstrates the need for an expert. And Dr. Boleyn should have been allowed to participate to testify. And so, again, I think that accentuates that point. So I appreciate the Court's time if there are no further questions. Thank you, Your Honor. Thank you very much, Mr. Kelleher. And we appreciate your willingness to accept the appointment and your assistance to the Court as well as your client. The case is taken under advisement.